IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VICTOR RAMIREZ<br>　　　Plaintiff | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO 7:14-cv-00457 |
| STATE FARM LLOYDS,<br>RICHARD FREYMANN AND<br>JUAN CARLOS DIMINICH<br>　　　Defendants. | §<br>§<br>§<br>§<br>§ | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants State Farm Lloyds ("State Farm") and Juan Carlos Diminich file this Motion for Summary Judgment because the appraisal process is complete, and State Farm's payment of the appraisal award entitles Defendants to summary judgment as a matter of law on Plaintiff's contractual and extra-contractual claims.

### I.      Grounds for Summary Judgment

1.      As a result of storm damage to his dwelling, Plaintiff filed suit against Defendants. Plaintiff invoked the appraisal provision of the Homeowners Policy and designated Shannon Cook as appraiser. State Farm designated Darrell Edwards as appraiser. Broadly speaking, the appraisal provision allows either party to invoke a process in which the amount of the loss is determined by agreement of appraisers and, if necessary, an umpire jointly chosen and mutually agreed to by the appraisers or appointed by the court. The appraisers in this case selected Cecil Parker to serve as umpire. The amount of loss in this case was set by appraiser Edwards and umpire Parker. State Farm paid the appraisal award within five (5) business days of receipt. Payment of the appraisal award resolves and disposes of all claims in this lawsuit. Plaintiff is

estopped from maintaining a breach of contract claim as a matter of law based on State Farm's timely payment after the appraisal award.  Additionally, Plaintiff has no extra-contractual claims because he has suffered no independent injury that would otherwise entitle him to damages and Defendants timely investigated his claim.  Finally, Plaintiff's claims and causes of action against Juan Carlos Diminich also fail.  Accordingly, Defendants move for summary judgment on all of Plaintiff's claims.

## II.     Summary Judgment Evidence

2.     In support of this motion, State Farm attaches the following summary judgment evidence filed herewith and incorporated by reference as if fully set forth herein:

Exhibit A:     Plaintiff's Homeowners Policy, with Business Records Affidavit

Exhibit B:     Declaration of State Farm Claim Specialist, Calvin C. Fluker, III

    Exhibit B-1:     State Farm Claim Activity File Notes Excerpts

    Exhibit B-2:     May 22, 2012, State Farm Letter to Plaintiff, Check and May 18, 2012 Estimate

    Exhibit B-3:     May 23, 2012, State Farm Letter to Plaintiff, Check and Estimate

    Exhibit B-4:     September 18, 2012, Note of Completion submitted by Plaintiff with Repair Invoices

    Exhibit B-5:     September 19, 2012, State Farm Letter to Plaintiff with Recoverable Depreciation Payment and Estimate

    Exhibit B-6:     March 6, 2015, Plaintiff's Appraisal Demand

    Exhibit B-7:     March 26, 2015, State Farm's Appointment of Appraiser

    Exhibit B-8:     Appraisal Award

    Exhibit B-9:     June 9, 2016, State Farm Letter Tendering Payment of Appraisal Award

Exhibit C:     *Stewart v. Geovera Specialty Ins.*, No. H-14-3162 (S.D. Tex., Oct. 21, 2015) (Order granting motion for summary judgment for carrier)

### III.     Undisputed Facts

3.     At the time of loss, Plaintiff's dwelling in Mission, Texas was insured for approximately $80,700.00 (Coverage, A Dwelling limits) under a State Farm Texas Homeowners Policy.[1] On or about April 23, 2012, a claim was reported for damage to Plaintiff's home from a weather event that occurred on April 20, 2012.[2] On or about May 4, 2012, State Farm spoke with Plaintiff to get additional information regarding the claim and schedule an inspection of the property.[3] The inspection was scheduled for May 14, 2012.[4] State Farm inspected the property on May 14, 2012, with Plaintiff present.[5] State Farm provided an estimate of loss to Plaintiff in the amount of $8,113.68, replacement cost value.[6] Plaintiff had made a previous hail claim with respect to the property in 2003, with overlapping damages to the 2012 claim.[7] State Farm paid Plaintiff $3,076.17, actual cash value, on the 2003 claim which included a full roof replacement.[8] Plaintiff did not, however, repair the property after the 2003 claim and payment.[9] On or about May 22, 2012, after deduction of the Policy's $807.00 deductible, $3,146.35 in depreciation, and $3,076.17 for overlapping damages paid (but never repaired) from the 2003 claim, State Farm issued Plaintiff an actual cash value payment of $1,084.16.[10] The next day, State

---

[1] See Exhibit A, Plaintiff's Homeowners Policy, with Business Records Affidavit.
[2] Exhibit B, Calvin C. Fluker, III Declaration at ¶ 5; Exhibit B-1, Claim Activity File Notes Excerpts.
[3] Id.
[4] Id.
[5] Id.
[6] Id.
[7] Ex. B at ¶ 5.
[8] Id.
[9] Id.
[10] Ex. B at ¶ 5; Exhibit B-2, May 22, 2012, State Farm Letter, Check and Estimate.

Farm discovered an error in the math associated with the prior 2003 claim and issued Plaintiff an additional payment of $987.63.[11]

4.  On or about September 18, 2012, Plaintiff called State Farm advising that all repairs to the property had been completed.[12]  He also submitted various material invoices along with a handwritten note reflecting that the repairs had been completed for the State Farm estimate price of $8,113.68.[13]  State Farm then released recoverable depreciation in the amount of $2,062.19 to Plaintiff.[14]  State Farm has no further contact with Plaintiff regarding his claim until it was served with the lawsuit on or about May 13 2014, without any pre-suit demand or notice.[15]

5.  On March 6, 2015, Plaintiff demanded appraisal under the Policy, appointing Shannon Cook as appraiser.[16]  On March 26, 2015, State Farm responded to Plaintiff's appraisal demand and appointed Darrell Edwards as appraiser.[17]  The two appraisers agreed that Cecil Parker would serve as umpire.[18]

6.  An appraisal award was issued setting the amount of loss at $17,274.02, on a replacement cost basis, and $15,220.18, on an actual cash value basis.[19]  Appraiser Edwards and umpire Parker signed the award.[20]  State Farm received the appraisal award

---

[11] *Ex. B* at ¶ 5; *Exhibit B-3*, May 23, 2012, State Farm Letter, Check and Estimate.
[12] *Ex. B* ¶ 6; *Exhibit B-1*, Claim Activity File Notes Excerpts.
[13] *Ex B* at ¶ 6; *Exhibit B-4*, Note of Completion Submitted by Plaintiff with Repair Invoices.
[14] *Ex. B* at ¶ 6; *Exhibit B-5*, September 19, 2012, State Farm Letter and Estimate.
[15] *Ex B* at ¶ 7.
[16] *Ex. B* at ¶ 8; *Exhibit B-6,* Plaintiff's Appraisal Demand Letter.
[17] *Ex. B* at ¶ 8; *Exhibit B-7*, State Farm's Appraisal Response Letter.
[18] *Ex. B* ¶ 8.
[19] *Ex. B* at ¶ 9; *Exhibit B-8*, Appraisal Award.
[20] *Id.*

on June 2, 2016.[21]  Within five (5) business days, on June 9, 2016, State Farm timely tendered to Plaintiff, through his counsel, payment of the award (less recoverable depreciation, deductible and prior payments) in the amount of $10,279.20.[22]

### IV.     Argument and Authorities

**A.  State Farm's payment of the appraisal award estops Plaintiff from maintaining a breach of contract claim.**

7.     It is well settled that "[a]n insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal."[23]  That is because "[t]he effect of an appraisal provision is to estop one party . . . from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."[24]  Here, no question as to liability remains because State Farm has paid the appraisal award.  Under Texas law, a contract claim does not survive the insurer's payment of an appraisal award.  For instance, in *Franco v. Slavonic Mutual Fire Insurance*, the insureds, after invoking appraisal, subsequently alleged that "payment of an appraisal award is not dispositive of the Franco Family's entire breach of contract

---

[21] *Ex. B* at ¶ 9.
[22] *Ex. B* at ¶ 10; *Exhibit B-9,* Letter Tendering Payment of Appraisal Award.
[23] *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2013 U.S. Dist. LEXIS 179692, at *14 (S.D. Tex. Dec. 20, 2013) (citing *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied) (insurer complied with every requirement of contract where it participated in appraisal process and paid amount set by appraisers and umpire); *see also Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *44 (N.D. Tex. Sept. 26, 2014) (quoting *Scalise*); *Russell v. Scottsdale Ins. Co.*, No. 4:10-CV-3057, 2014 U.S. Dist. LEXIS 143882, at *17 (S.D. Tex. Sept. 30, 2014) (insured is estopped from asserting breach of contract when insurer pays appraisal award); *Caso v. Allstate Tex. Lloyds*, No. 7:12-CV-478, 2014 U.S. Dist. LEXIS 15279, at *14-24 (S.D. Tex. February 7, 2014) (finding insured's payment of appraisal award estopped insured's breach of contract claim); *Waterhill Cos. v. Great Am. Assur. Co.*, No. H-05-4080, 2006 U.S. Dist. LEXIS 15302, at *8 (S.D. Tex. March 16, 2006) (insurer did not breach contract when it paid appraisal award).
[24] *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683-85 (Tex. App.—Dallas 1996, writ denied); *see also Lundstrom v. USAA*, 192 S.W.3d 79, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

cause of action against Slavonic Mutual."²⁵ The appellate court disagreed, holding that because the insurer paid the full amount of the appraisal award, the insureds were estopped from maintaining a breach of contract claim against the insurer.²⁶ Simply put, compliance with the contractual appraisal award negates any claim for breach of contract as a matter of law. Like the insurer in *Franco*, State Farm fully participated in the appraisal process and timely tendered payment of the appraisal award. Accordingly, as a matter of law, there is no breach of contract, and State Farm is entitled to summary judgment on Plaintiff's breach of contract claim.²⁷

**B.     There are no fact issues that prevent summary judgment on Plaintiff's breach of contract claim because Plaintiff can repair the loss in order to recover replacement cost benefits.**

8.     "[C]ourts across the country . . . have universally held that [a replacement cost provision] requires repair or replacement of the destroyed property before the insured is entitled to recover replacement cost damages."²⁸ Replacement cost benefits insure

---

[25] *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[26] *Franco*, 154 S.W. 3d at 786; *see also Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143-44 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Stewart v. Geovera Specialty Ins. Co.*, No. H-14-3162 (S.D. Tex., Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.) (timely payment of appraisal award entitled insurer to summary judgment on all claims, including Chapter 542 prompt payment claim) (copy attached as *Exhibit C*).

[27] *See Wayne Michels and Marie Michels v. Safeco Ins. Co. of Indiana*, 544 Fed. App'x 535, 542 (5th Cir. 2013) (affirming district court's granting of motion for summary judgment for carrier after payment of the appraisal award); *Breshears*, 155 S.W.3d at 345 (holding insurer entitled to summary judgment on insured's breach of contract claim because the insurer participated in the appraisal process and paid the appraisal award); *Anderson v. American Risk Ins. Co., Inc.*, No. 01-15-00257-CV, 2016 WL 3438243 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet. h.) (affirming summary judgment for carrier); *Richardson E. Baptist Church v. Phil. Indem. Ins. Co., et al.*, No. 05-14-01491-CV, 2010 Tex. App. LEXIS 3267, at *17 (Tex. App.—Dallas, Mar. 30, 2016, no pet. h.) (affirming motion for summary judgment for carrier); *Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ) (holding insurer was entitled to summary judgment on breach of contract claim because it tendered appraisal award pursuant to the contract); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.3d 872, 875 (Tex. App—San Antonio 1994, no writ) (holding trial court erred by allowing a trial of a breach of contract claim after insurer promptly paid an appraisal award).

[28] *Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*, 261 S.W.3d 861, 863 (Tex. App.—Dallas 2008, pet. denied); *see also Lerer Realty Corp. v. MFB Mut. Ins. Co.*, 474 F.2d 410, 413 (5th Cir. 1973) ("If restoration is made, then, and only then, the liability of MFB would be calculated under the

against the risk that repairing or replacing property will cost more than the actual cash value of the property. Actual cash value is the value of the property in its depreciated state. "[R]eplacement cost coverage insures against the expected depreciation of the property."[29] Thus, replacement cost benefits place an insured in a better position than before the loss, and because of that "there is a moral hazard that the insured will intentionally destroy the insured property in order to gain from the loss. For this reason, most replacement cost policies require actual repair or replacement of the damaged property as a condition precedent to recovery."[30]

9.  Here, the Policy states "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss" and "when the repair is *actually completed*, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of your property."[31] The Policy allows two years for these required repairs: "[T]o receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed."[32]

---

endorsement."); *Devonshire*, No. 3:12-cv-2199-b, 2014 U.S. Dist. LEXIS 135939, at *44 ("Here, the plain language of the parties' contract dictates that Devonshire may only recover on a replacement cost basis *after* it has completed repairs.") (emphasis in original); *Cent. Mut. Ins. Co. v. White Stone Props.*, No. A-12-CA-275-SS, 2014 U.S. Dist. LEXIS 35797, at *15 (W.D. Tex. Mar. 19, 2014) (noting that "courts have routinely enforced replacement cost provisions") (citations omitted); *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-cv-471, 2014 U.S. Dist. LEXIS 107484, at *19 (E.D. Tex. Aug. 5, 2014) (Giblin, Mag. J.) ("An insured cannot recover repair or replacement costs until he or she actually repairs or replaces the insured structure."); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 932 (N.D. Tex. 2001) ("Obviously, an insured cannot recover repair or replacement costs unless and until he actually repairs or replaces the insured structure.") (citations omitted) (Kaplan, Mag. J.).

[29] *D&S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 15 (Neb. 2012).
[30] *Id.*
[31] *Exhibit A*, at SF_PROD_000013 RAMIREZ, V.
[32] *Id.*

10. It is undisputed that Plaintiff has not repaired the loss identified in the appraisal award. Until he does, he is not entitled to replacement cost benefits under the Policy. When State Farm paid the appraisal award it notified Plaintiff that he would have to repair the property by May 16, 2018—over six (6) years from the date of loss—to recover the depreciation included in the award amount.[33] Thus, Plaintiff has been given at least (and actually more than) the full benefit of the two-year replacement cost period in the Policy based on State Farm's exclusion of the time period from its first inspection to the date the award was paid.

11. With the extended time period to perform repairs, Plaintiff retains the ability to recover replacement cost benefits—subject to the contractual condition precedent of performing actual repairs. But allowing Plaintiff to recover replacement cost benefits without completing repairs vitiates the contract and improperly gives Plaintiff a windfall because the parties went to appraisal:

> It is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional coverage. To allow an insured to recover replacement costs in the absence of actual replacement would permit the insured to recover for a loss he has not suffered. Accordingly, we conclude that [the insured] was required to replace the damaged property as a condition precedent to its recovery under the policy and that its failure to do so negates its entitlement to recover replacement costs.[34]

The universal enforcement by courts of replacement cost provisions requiring repairs be made to recover depreciation avoids putting an insured in a better position than before the loss.

---

[33] *Exhibit B-9*, Letter Tendering Payment of Appraisal Award.
[34] *Fitzhugh*, 261 S.W.3d at 864.

**C.     Without a breach of contact claim, Plaintiff cannot maintain any extra-contractual causes of action.**

12.     Because the amount of loss has been determined by appraisal and timely paid, Plaintiff can no longer maintain any of his extra-contractual causes of action because they are derivative of Plaintiff's defunct breach of contract claim.  Plaintiff's Petition alleges extra-contractual causes of action for violations of Chapter 541 of the Texas Insurance Code, fraud, conspiracy to commit fraud, and breach of the common law duty of good faith and fair dealing.[35]  But the facts giving rise to Plaintiff's extra-contractual causes of action relate solely to Defendants' handling of Plaintiff's insurance claim.  Merely showing a *bona fide* dispute about the insurer's liability on the contract does not rise to the level of bad faith, and Plaintiff has not alleged any facts that would give rise to an independent injury claim.[36]  For these reasons, Defendants are entitled to summary judgment on each of Plaintiff's extra-contractual causes of action.

**(i.)     No bad faith or Insurance Code violations absent a breach of contract; no actionable misrepresentations.**

13.     The general rule in Texas is that an insured cannot prove a bad faith claim absent a breach of contract.[37]  The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim" or fails "to timely investigate the insured's claim."[38]  The principle stems from

---

[35]   *See* Plaintiff's Original Petition ¶¶ 35-72.
[36]   *See Charles G. Aldous PC v. Lugo*, No. 3:13-CV-3310-L, 2014 U.S. Dist. LEXIS 159684, at *12-13 (N.D. Tex. Nov. 12, 2014) ("There can be no recovery against an insurer for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of that which would have resulted from a wrongful denial of policy benefits.") (quoting *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)).
[37]   *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Toonen*, 935 S.W.2d at 941.
[38]   *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); *Republic Ins. Co.*, 903 S.W.2d at 341; *Toonen*, 935 S.W.2d at 941.

the fact that the threshold for bad faith can be reached only when a breach of contract is accompanied by an independent tort; evidence that merely shows a *bona fide* dispute about the insurer's liability on the contract (like the coverage dispute here) does not rise to the level of bad faith.[39] Accordingly, when a court finds that an insurer has not breached the policy, the insured cannot maintain a bad faith claim. Plaintiff's cause of action under section 541.060 of the Insurance Code relates to Defendants' claims handling.[40] Liability under Texas Insurance Code Chapter 541 is reviewed under "same standard as a common law bad faith claim," and requires the same predicate for recovery.[41] And "evidence of proper completion of the appraisal process and tendering of payment" shows there are no genuine issues of material fact for Plaintiff's fraud claim.[42] Also, the alleged misrepresentations pled by Plaintiff[43] are not actionable as a matter of law.[44] Post-loss misrepresentations, like those alleged by Plaintiff, will not support claims under the Texas

---

[39] *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994); *Nat'l Union Fire Ins. v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426 (Tex. App.—Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex. 1991).

[40] *See* Plaintiff's Original Petition ¶¶ 24-28, 37-45.

[41] *See Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, pet. denied); *Spicewood Summit Office Condominiums Ass'n, Inc. v. Amer. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.—Austin 2009, pet. denied); *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding Texas courts have ruled DTPA and Insurance Code claims require same predicate for recovery as bad faith causes of action).

[42] *Tabor v. State Farm Lloyds*, No. 7:14-cv-389 (S.D. Tex. April 9, 2015); *see also Barry v. Allstate Texas Lloyds*, No. 4:14-cv-00870, 2015 U.S. Dist. LEXIS 40953, at *15-17 (S.D. Tex. March 31, 2015) (dismissing fraud claim on summary judgment after payment of appraisal award).

[43] *See* Plaintiff's Original Petition, ¶ 24, in which Plaintiff allege that Defendants "misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence."

[44] *See, e.g., Weber Paradise Apartments, LP v. Lexington Ins. Co.*, No. 3:12-CV-5222-L, 2013 U.S. Dist. LEXIS 72892, at *20-23 (N.D. Tex. May 23, 2013) (general allegations without critical underlying facts fail to state a fraud claim); *Druke v. Fortis Health*, No. 5:06-CV-00052, 2007 U.S. Dist. LEXIS 402, at *13-16 (S.D. Tex. Jan. 4, 2007) (general assurance policy would be honored is not a material misrepresentation that can support a fraud claim); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (statements about claims being handled professionally "more in the nature of non-actionable puffery than actionable representations of material fact.").

Insurance Code.[45] Plaintiff has done nothing in reliance of the alleged post-loss misrepresentations, nor has he been harmed other than the injury which would always occur when an insured is not paid what he contends is due.[46] Plaintiff's conspiracy to commit fraud claim fails because it is derivative of the underlying fraud claim which fails.[47]

14. Defendants promptly investigated Plaintiff's claim after he reported it.[48] State Farm participated in the appraisal process and timely tendered payment of the appraisal award within five (5) business days of receiving it.[49] Because the facts are undisputed that Defendants timely investigated the claim and then State Farm later paid the amount of loss based on the appraisal award and Plaintiff has not alleged any facts which would give rise to an independent injury claim, Defendants are entitled to summary judgment as a matter of law on Plaintiff's extra-contractual claims. Additionally, Plaintiff has not alleged any valid claims or causes of action against Juan Carlos Diminich. The causes of action Plaintiff has asserted against Mr. Diminich in his pleadings fail and therefore Mr. Diminich is also entitled to a summary judgment.

**(ii.) Timely payment of an appraisal award precludes prompt payment damages under Chapter 542 of the Texas Insurance Code.**

15. State Farm received the appraisal award on June 2, 2016, and tendered payment of the award on June 9, 2016—within five (5) business days after receipt of the

---

[45] *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 n.55 (Tex. 1998) (citing *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694-95 (Tex. 1979)); *Avila v. Loya*, 2005 Tex. App. LEXIS 6324, at *13 (Tex. App.—Amarillo August 10, 2015, no pet.); *see also Gulf States Underwriters of La., Inc. v. Wilson*, 753 S.W.2d 422, 430-31 (Tex. App.—Beaumont 1988, writ denied) (letter to insured opting not to renew policy did not constitute misrepresentation).

[46] *See Royal Globe Inc. Co.*, 577 S.W.2d at 694; *Walker v. Fed Kemper Life Assurance Co.*, 828 S.W.2d 442, 453 (Tex. App.—San Antonio 1992, no writ) ("As a result, a post-loss denial of liability for a questionable claim is not actionable under the DTPA or Insurance Code.").

[47] *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

[48] *Ex. B* at ¶ 5-6.

[49] *Ex. B* at ¶¶ 8-10; *Exhibit B-6*, Letter Tendering Payment of Appraisal Award.

award.[50] Under Texas law, full and timely payment of the appraisal award "precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."[51] As explained in *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, "when the appraisal clause is invoked, a delay in payment pursuant to the appraisal process does not constitute a §542.058 violation."[52] Similarly, as explained in *Scalise v. Allstate Texas Lloyds* "an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process (in this case, invoked by the insured) before paying all covered damages determined by that process."[53] When the insured in *Gabriel v. Allstate Texas Lloyds* argued that Allstate breached the prompt-payment requirements of Chapter 542 "by failing to pay the appraisal-determined amount of loss during the initial adjustment of the claim," the court was clear: "these arguments misinterpret the relevant authorities and are vitiated by the policy, statute, and record."[54]

16. Because State Farm timely paid the award, there is no violation of the Texas Insurance Code's prompt payments deadlines. Thus, State Farm is entitled, as a matter of law, to summary judgment on Plaintiff's claim for alleged violations of Chapter 542 of the Texas Insurance Code.

---

[50] *Ex. B* at ¶¶ 9-10; *Exhibit B-6*, Letter Tendering Payment of Appraisal Award.

[51] *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563-64 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Amine v. Liberty Lloyds of Tex., Inc.*, No. 01-06-00396-CV, 2007 Tex. App. LEXIS 6280, at *4-6 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.); *Breshears*, 155 S.W.3d at 344; *Bernstien v. Safeco Ins. Co.*, No. 05-13-01533-CV, 2015 Tex. App. LEXIS 6699, at *3 (Tex. App.—Dallas June 30, 2015, no pet.).

[52] *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 652 (S.D. Tex. 2012); *see also Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed. App'x 366, 369 (5th Cir. 2012) (affirming district court's entire summary judgment for insurer, including prompt payment claim, based on timely payment of appraisal award).

[53] *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2013 U.S. Dist. LEXIS 179692, at *17-19 (S.D. Tex. Dec. 20, 2013).

[54] *Gabriel v. Allstate Texas Lloyds*, No. 7:13-CV-181, 2013 U.S. Dist. LEXIS 186032, *12 (S.D. Tex. Nov. 1, 2013).

## V. Conclusion and Prayer

17. By participating in the appraisal process, the parties agreed the appraisal award would "set the amount of loss." Appraisal has concluded and a binding appraisal award was issued setting the amount of loss. State Farm paid the award within five (5) business days and there are no remaining issues regarding damages or liability; therefore, as a matter of law, Plaintiff cannot maintain a breach of contract action. Plaintiff's extra-contractual claims, which are derivative of his breach of contract claim and unsupported by any evidence, also fail. Accordingly, Defendants are entitled to summary judgment as a matter of law on all of Plaintiff's claims alleged in this suit.

**DEFENDANTS STATE FARM LLOYDS and JUAN CARLOS DIMINICH** respectfully request that the Court grant summary judgment in favor of Defendants on all of Plaintiff's claims. Defendants further pray for all other relief the Court finds just and equitable.

Respectfully submitted,

**RAMEY, CHANDLER, QUINN & ZITO, P.C.**

By: /s/ Brian M. Chandler
Brian M. Chandler
State Bar No. 04091500
Federal Bar No. 7660
bmc@ramey-chandler.com
Ronald P. Schramm
State Bar No.  17810385
Federal Bar No. 174875
rps@ramey-chandler.com
750 Bering Drive, Suite 600
Houston, Texas 77057
(713) 266-0074
(713) 266-1064 *(fax)*

**ATTORNEY FOR DEFENDANTS**

- 14 -

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record are being served with a copy of this document in accordance with the FEDERAL RULES OF CIVIL PROCEDURE via the Court's CM/ECF system on July 8, 2016.


                                        /s/ Brian M. Chandler
                                        Brian M. Chandler